

MICHAEL P. LOWRY, ESQ.
Nevada Bar No. 10666
E-mail: Michael.Lowry@wilsonelser.com
6689 Las Vegas Boulevard South, Suite 200
Las Vegas, NV 89119
Tel: 702.727.1400/Fax: 702.727.1401
Attorneys for Amateur Athletic Union of the United
States, Inc.

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Amateur Athletic Union of the United States, Inc.<br><br>Plaintiff,<br><br>vs.<br><br>Matthew Williams; Jam On It Basketball Academy, Inc.; Jam On It, LLC; Jam On It Sportsplex, LLC; Michael Williams; Ennis Wesley; Tatiana Wesley; Brennan Sullivan; Sportsplex Las Vegas, LLC; John Does 1-10 and Doe Corps. 1-10,<br><br>Defendants. | Case No.: 2:23-cv-864<br><br>**Complaint with Jury Demand** |

Amateur Athletic Union of the United States, Inc. requests a jury trial and pleads as follows:

## NATURE OF ACTION

1. This is an action for infringement of Plaintiff's famous federally-registered trademarks, AAU and the AAU Shield logo ("AAU Shield"), and common law trademarks under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), for unfair competition, false endorsement and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), for dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and for substantial and state law related claims under the statutory and common laws of the State of Nevada, the State of Utah, and the State of Hawaii, all arising from the Defendants' unauthorized use of the AAU's intellectual property in connection with the marketing, advertising, promotion, offering for sale,

283104426v.2

and/or sale of Defendants' goods and services, and its efforts to trade upon the good will of AAU, all of which are confusing to the consuming public, and damaging to the AAU.

2. Plaintiff seeks injunctive and monetary relief as a result of Defendants' actions.

**JURISDICTION**

3. This court has jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1332(a), and 1338(a) and (b) and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

4. This Court has personal jurisdiction over Defendants based upon the following: MATT WILLIAMS is a resident of the State of Nevada; JAM ON IT ENTITIES are Nevada entities; MIKE WILLIAMS is a resident of the State of Nevada,; ENNIS WILLIAMS is a resident of the State of Nevada; TATIANA WESLEY is a resident of the State of Nevada; BRENNAN SULLIVAN is a resident of the State of Nevada; and a substantial amount of the actions alleged herein took place in the State of Nevada.  Upon information and belief, the DOE DEFENDANTS either are Nevada residents or a substantial amount of their actions took place in the State of Nevada, or had damaged the AAU in the State of Nevada.

**VENUE**

5. Venue is proper in this district under 28 U.S.C. § 1391(b)(1), in that Defendants reside in this district, and under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

**PARTIES**

6. Plaintiff AAU is a corporation that is incorporated in the State of New York and has its principal place of business in Orlando, Florida. Since 1888, the AAU has raised tomorrow's leaders on today's playgrounds and is the largest multi-sport non-profit organization in the country.  For over 130 years, the AAU has offered youth the opportunity to participate in amateur athletics.

7. The AAU is a membership organization that allows its members to participate in approximately 45 sports at local, regional and national events.  It is unique insofar as it offers insurance coverage for sports accidents when participating in AAU licensed events.

-2-

283104426v.2

8. Many of the most successful athletes in the country competed in or were honored at AAU events as a youth athlete, spanning many different sports.

9. Upon information and belief, Defendant MATTHEW WILLIAMS JR. ("Matt Williams" or "Defendant") is an individual who resides in Sparks, Nevada. Upon information and belief, Matt Williams is a citizen of Nevada. Upon information and belief, Matt Williams is a former basketball player and coach, who founded the Jam On It youth basketball program.

10.    Upon information and belief, Defendant JAM ON IT BASKETBALL ACADEMY INC. ("JOI Basketball" or "Defendant") is a Domestic Nonprofit Corporation that is incorporated in the State of Nevada and has its principal place of business in Reno, Nevada. Upon information and belief, Matt Williams is an Officer of JOI Basketball.

11.    Upon information and belief, JOI Basketball offers year-round basketball tournaments, private lessons, group lessons, leagues, traveling teams and camps/clinics.

12.    JOI Basketball operates a website located at Jamonitacademy.com ("JOI Basketball Website").

13.    JOI Basketball's Website claims that JOI Basketball's mission is "to build a child's confidence and promote a sense of accomplishment by engaging children in fun, competitive play and to foster the belief that trying one's best is as important in life as it is in sports."

14.    Upon information and belief, Defendant JAM ON IT L.L.C. ("JOI" or "Defendant") is a limited liability company formed in October 2013 under the laws of the State of Nevada and does business in Reno, Nevada. Upon information and belief, Matt Williams is the Managing Member of JOI.

15.    Upon information and belief, JOI operates a basketball instruction business, hosts basketball tournaments, rents equipment, and engages in a for profit business.

16.    Upon information and belief, JOI operates several websites including Jamonit.org ("JOI Website") and Jamonitequipmentrental.com ("JOI Equipment Website").

17.    Upon information and belief, Defendant JAM ON IT SPORTSPLEX L.L.C. ("JOI Sportsplex" or "Defendant") is a limited liability company formed under the laws of the State of Nevada and does business in Sparks, Nevada. Upon information and belief, JOI Sportsplex

-3-

has or had three members: ENNIS WESLEY, MICHEAL WILLIAMS, and MATT WILLIAMS. Upon information and belief, as of September 27, 2022, ENNIS WESLEY, MICHEAL WILLIAMS, and MATT WILLIAMS were all managing members of JOI Sportsplex. Upon information and belief, MATT WILLIAMS is the Registered Agent for JOI Sportsplex.

18.    JOI Sportsplex operated and/or operates a multi-sport facility in Henderson, Nevada.

19.    Upon information and belief, JOI Sportsplex operates and/or operated a website with a uniform resource locator ("URL") of sportsplexlv.com.

20.    Upon information and belief, JOI Basketball, JOI and JOI Sportsplex operate and/or operated social media sites.

21.    Upon information and belief, Defendant MICHEAL WILLIAMS ("Mike Williams" or "Defendant") is an individual who resides in Las Vegas, Nevada. Upon information and belief, Mike Williams is a basketball coach, who works with the Jam On It youth basketball program.

22.    Upon information and belief, Defendant MIKE WILLIAMS was and/or is a Managing Member of the JOI SPORTSPLEX.

23.    Upon information and belief, Defendant ENNIS WESLEY ("Ennis Wesley" or "Defendant") is an individual who resides in Las Vegas, Nevada. Upon information and belief, Ennis Wesley is a basketball coach, who works with the Jam On It youth basketball program.

24.    Upon information and belief, Defendant ENNIS WESLEY was and/or is employed by MATT WILLIAMS and/or one of the Jam On It entities.

25.    Upon information and belief, Defendant ENNIS WESLEY was employed and/or is the General Manager of the Jam On It Sportsplex for over five years.

26.    Upon information and belief, Defendant ENNIS WESLEY was and/or is the Managing Partner of the Jam On It Sportsplex for over five years.

27.    Upon information and belief, Defendant ENNIS WESLEY was and/or is an owner of the Jam On It Sportsplex for over five years.

28.    Defendant ENNIS WESLEY was and/or is the Governor of the AAU's Pacific District.

-4-

283104426v.2

29. Upon information and belief, Defendant ENNIS WESLEY was and/or is an officer of the Pacific AAU.

30. Upon information and belief, Defendant TATIANA WESLEY ("Tatiana Wesley" or "Defendant") is an individual who resides in Las Vegas, Nevada.

31. Upon information and belief, Tatiana Wesley has been employed by MATT WILLIAMS and/or one of the Jam On It Entities.

32. Upon information and belief, Defendant TATIANA WESLEY was and/or is an officer of the AAU's Pacific District.

33. Upon information and belief, Defendant BRENNAN SULLIVAN ("Brennan Sullivan" or "Defendant") is an individual who resides in Nevada.

34. Upon information and belief, BRENNAN SULLIVAN has been employed by MATT WILLIAMS and/or one of the Jam On It Entities.

35. Upon information and belief, Defendant BRENNAN SULLIVAN was and/or is an officer of the AAU's Pacific District.

36. Upon information and belief, Defendant BRENNAN SULLIVAN was and/or is an officer in the Plaintiff's Hawaii District.

37. On or about January 26, 2023, a domestic limited liability company known as SPORTSPLEX LAS VEGAS, LLC was formed.

38. Defendant ENNIS WESLEY is a manager of SPORTSPLEX LAS VEGAS, LLC.

39. Defendant ENNIS WESLEY publicly claims to be the owner of Sportsplex, Las Vegas.

40. At various times, Defendants MATT WILLIAMS, MIKE WILLIAMS, ENNIS WESLEY, TATIANA WESLEY and BRENNAN SULLIVAN were and/or are members of the AAU.

41. SPORTSPLEX LAS VEGAS, LLC is a multi-sport facility with over 40,000 sq. ft. located in Henderson, Nevada.

42. SPORTSPLEX LAS VEGAS, LLC has hosted events at a facility located in Henderson, Nevada.

43. Upon information and belief, SPORTSPLEX LAS VEGAS, LLC works with Defendant MATT WILLIAMS and/or one of the JAM ON IT ENTITIES.

-5-

283104426v.2

44. JOHN DOES 1-10 are individuals who were employed by, may have participated in, facilitated, were responsible, or acted in concert with a Defendant and may be liable for the actions alleged herein.

45. DOE CORPS 1-10 are entities that may have contracted with a Defendant, participated in, facilitated, were responsible for, or acted in concert with a Defendant and may be liable for the actions alleged herein.

**FACTS**

A. Plaintiff and Its "AAU" Trademark

46. The AAU is the largest non-profit, volunteer, multi-sport organization in the world, with well over half a million members. It was founded in 1888 to establish standards and uniformity in amateur sport. During its early years, the AAU served as a leader in international sport representing the U.S. in the international sports federations. The AAU worked closely with the Olympic movement to prepare athletes for the Olympic Games. In the late 1970's, the AAU reshifted its focus and efforts to providing sports programs for all participants of all ages beginning at the grassroots level.

47. The AAU operates the AAU Junior Olympic Games, the largest multi-sport event in the country, the AAU Junior National Volleyball Championships, the largest volleyball event in the world, and bestows the AAU James E. Sullivan Award, given out each year to America's top athlete. It administers the Presidential Youth Fitness Program, a program aimed at modernizing fitness education in school physical education classrooms. It is a member of the International School Sport Federation, recognized by the International Olympic Committee, to promote the values and interests of education through sport.

48. The AAU has chartered Districts to oversee activities in geographic regions in the United States. A District member is an organization chartered by the AAU Congress (the legislative body of the AAU) to provide administrative services within a designated geographic area.

49. Each AAU District is managed by a Board of Managers. The Board of Managers consists of Clubs' representatives, Officers of the District, District Sports Directors, and up to two at-

-6-

283104426v.2

large members appointed by the Governor.  The duties of the District and its management is provided for in the AAU Code Book.

50.    The Defendants' operations were within the Pacific AAU District ("Pacific AAU" or "AAU Pacific").  The AAU Pacific District covers parts of California and Nevada.

51.    The Pacific AAU District is governed by a Governor, Secretary, Treasurer and a Board of Managers.  Members elected to represent the District must be current AAU members in good standing.

52.    Plaintiff is the owner of hundreds of common law trademarks and dozens of trademarks registered in the United States Patent and Trademark Office ("AAU Trademarks").  Its valid and subsisting United States trademarks include:

| Mark | Registration No. | Reg. Date | Date of 1st Use in Commerce | Int'l Class | Goods/Services |
|---|---|---|---|---|---|
| <br>(The "AAU SHIELD") | 0791171 | June 15, 1965 | 1935 | 42 | Promotion and Encouragement of Amateur Sports and Physical Education throughout the United States. |
| AAU<br>(The "AAU Mark) | 0881944 | December 9, 1969 | 1888 | 41, among others, including Classes 14, 16, | Organizing, promoting, sponsoring, sanctioning, conducting, administering, regulating and governing |

-7-

| | | | | 18, 25 and 200 | amateur athletic programs and activities; establishing and maintaining by registration a uniform standard of amateur stading for athletes; instituting, regulating and awarding amateur athletic championship; as well as maintaining records and certifyingrecord performances of amateur athletes; and qualifications of officials to perform such services. |
|---|---|---|---|---|---|
| PACIFIC AAU ["Pacific AAU Mark"] | 3218441 | March 13, 2007 | First Use: 1890; First Use in Commerce: At least as early as July 18, 2006 | 41 | Establishing and maintaining by registration a uniform standard of amateur athletic standing fir athletes; verifying record perfomances of amateur athletes; sanctioning, regulating and governing amateur athletic programs and activities; regulating amateur athletic championships. |

-8-

53. The above listed registered trademarks have become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065.

54. Attached as **Exhibit 1** are true and correct copies of the registration certificates for each of the above-listed trademarks.

55. As a result of its widespread, continuous, and exclusive use of the AAU Mark and AAU SHIELD to identify its goods and services and Plaintiff as their source, Plaintiff owns valid and subsisting federal statutory and common law rights to the AAU Mark and AAU SHIELD.

56. Plaintiff's AAU Mark and AAU SHIELD are distinctive to both the consuming public and Plaintiff's trade.

57. Plaintiff has expended substantial time, money, and resources marketing, advertising, and promoting the goods and services provided under the AAU Trademarks including through AAU's marketing, advertising, and promotional efforts, grass roots organizations' conduct, hosting, sponsoring, licensing, and promoting tournaments and competitions, and through the provision of goods and services through channels of distribution bearing such marks. Plaintiff operates a prominent website at AAUSports.org and has subsidiary websites for different sports and regions.  Plaintiff has spent millions of dollars on the marketing, advertising, and promotion of the programs provided under the AAU trademarks.

58. Plaintiff, through its Districts, Clubs and licensees provide the goods and services under the AAU trademarks.

59. Plaintiff's goods and services under AAU trademarks are offered through a primarily volunteer base for all people to have the physical, mental and moral development of amateur athletes and to promote good sportsmanship and good citizenship.  Its motto is "Sports for All, Forever."

60. The Plaintiff's good and services are regarded as high quality and critical to the development of youth athletics.

61. As a result of Plaintiff's expenditures and efforts, the AAU trademarks have come to signify the high quality of the goods and services designated by the AAU trademarks, and acquired incalculable distinction, reputation, and goodwill belonging exclusively to Plaintiff.

-9-

283104426v.2

62. AAU's trademarks and the goods and services offered thereunder have received significant unsolicited coverage in various media.

63. As a result of its distinctiveness and widespread use and promotion throughout the United States, Plaintiff's AAU Mark and AAU SHIELD are famous trademarks within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. 1125(c), and became famous prior to the acts of the Defendants alleged herein.

64. Plaintiff has scrupulously and successfully enforced and protected its trademarks against past infringements.

B. Defendants' Unlawful Activities

65. Upon information and belief, Defendants are engaged in offering and providing sport programs, facilities and/or tournaments, primarily in the sports of basketball, volleyball and more recently pickleball.

66. Without Plaintiff's authorization, and upon information and belief, beginning after Plaintiff acquired protectable exclusive rights in its AAU trademarks, Defendants adopted and began using the AAU Mark and AAU SHIELD in US commerce (hereinafter, the Defendants' use(s) of AAU trademarks shall be referred to as "Infringing Marks").

67. The Infringing Marks adopted and used by Defendants are identical to and/or confusingly similar to Plaintiff's trademarks.

68. Upon information and belief, Defendants have been engaged in the manufacture, distribution, provision, advertising, promotion, offering for sale, and sale of goods, and the advertising, promotion and provision of services using the Infringing Marks throughout the United States, including Nevada. Attached hereto as Exhibit 2 are true and correct photographic depictions/copies of representative documents showing Defendants' use of the Infringing Marks.

69. JOI Basketball's unauthorized and infringing uses appear on the JamonitAcademy.com website where the AAU Shield is prominently displayed. For example, the Girls Travel Team has a Banner prominently displaying the AAU Shield:

-10-

283104426v.2



Girls Travel Team

70.    The JamonitAcademy.com website also has links to social media sites, including Facebook, Instagram and Twitter.  The Facebook page is https://www.facebook.com/JamOnItBasketball/ (which lists its website as JamOnIt.org); the Instagram Page is https://www.instagram.com/jamonitbasketball/ (this has a logo of SportsPlex Las Vegas); and the Twitter page resolves to Wix.

71.    The JamonitAcademy.com website also has a tab titled "Tournaments" which provides as follows:

> Jam On It Travel teams competes in Local, Regional and Nationals Events. We will cater our teams around the season and tournaments. Our teams will play in our Jam On It hosted tournaments and leagues. **Our youth teams compete in the AAU Pacific District Tournament Series tournaments, which are highly regarded in AAU circles as being the best tournaments in the region.**  [Emphasis added].

72.    The JamonitAcademy.com website also has a tab titled "Travel Teams," which when clicked leads to https://www.jamonitacademy.com/about-travel-teams.  The image on this page has a boy with an AAU logo on his shorts.  In addition, there are other images that carry the AAU logo.

73.    JOI operates a website located at JamOnIt.org.

74.    The Jamonit.org home page notes that JamOnIt is the "host of the largest basketball tournament in the World! The Reno Memorial Basketball Tournament has become a must attend event with over 1000 Amateur youth teams participating."  This statement also appeared on Jamonit.org's website prior to September 2022.

-11-

283104426v.2

75. Prior to September 2022, the Reno Memorial Basketball Tournament was an AAU licensed Tournament.

76. The 2022 Reno Memorial Day Tournament used a logo that prominently featured the AAU Shield:



77. In 2023, JOI is advertising and promoting a Reno Memorial Day Tournament to clubs in organizations that are competitors of AAU.

78. The 2023 Reno Memorial Day Tournament webpage on JOI's website includes a Tournament Package with references to AAU and use of the AAU Shield.

79. The Tournament Package uses material that had been previously used in connection with AAU licensed tournaments which had been available to all of the AAU teams that participated in the tournament.

80. JOI advertises and promotes other tournaments that were operated under the AAU banner in 2022 and before.  These include, but are not limited to:

    a. The Pacific Rim Championships in Hawaii;

    b. The West Coast Championships in Nevada;

    c. The Las Vegas Classic in Nevada;

    d. The Las Vegas Grand Finale in Nevada;

    e. The Salt Lake Slam in Utah;

    f. The Big Mountain Jam in Utah;

    g. The Rocky Mountain Showcase in Utah; and

    h. The West Coast Shootout in Nevada.

283104426v.2

81. These tournament pages include Tournament Packages use material that had been previously used in connection with AAU licensed tournaments which had been available to all of the AAU teams that participated in the tournaments.

82. Some of the tournaments use logos including the AAU Mark and the AAU Shield.

83. The tournament pages have other material branded with the AAU Mark and/or the AAU Shield.

84. Some of the tournament pages have images depicting AAU players.

85. Some of the tournament pages have images utilizing the AAU Mark and/or the AAU Shield.

86. The tournament pages also include a Zero Tolerance Policy indicating a relationship with the AAU.

87. Since mid-September, 2022, the Defendants were not authorized to use the AAU Mark, the AAU Shield, other AAU trademarks, and images and material branded with AAU.

88. One or more of the Defendants operates or operated the SportsplexLV.com website.

89. The Sportsplexlv.com website used and/or uses AAU trademarks without authorization.

90. The Sportsplexlv.com website contains material branded with the AAU Mark and/or the AAU Shield.

91. The Sportsplexlv.com website advertises its mission "to become a world recognized and respected sports & convention facility. A registered non-profit organization participating under the Amateur Athletic Union (AAU) located in Henderson, Nevada. Any contributions are tax deductible. We promote 'Great Sports & Life Skills' and are a Proud Sponsor of AAU Sports."

92. One of more of the Defendants operated a Friday Night Hoops program at the Sportsplex in Las Vegas.

93. One or more of the Defendants claimed that the Friday Night Hoops program was "licensed by Amateur Athletic Union of the US, Inc.," noting that "All participants must have current AAU memberships."

94. The Friday Night Hoops program was not licensed by the AAU.

-13-

283104426v.2

95. Sportsplexlv.com still promotes the Friday Night Hoops program with advertisements containing the AAU Mark and the AAU Shield.

96. JOI Sportsplex and/or one of the other Defendants promoted the Friday Night Hoops program with the following advertisement:



97. One or more of the Defendants advertised on RenoTaho the Jam On It Pickleball and Basketball Academy using a logo with the AAU Shield:



-14-

98. The use of the AAU Shield on the Jam On It Pickleball and Basketball Logo was not authorized.

99. The Jamonit.org website has links to social media including Facebook, Twitter and Instagram.

100. The Jam On It Facebook page (publicized on the Jamonit.org website) contains images and posts that include the AAU Mark and/or the AAU Shield.

101. The JamOnItBasketball Instagram page (publicized on the Jamonit.org website and promoting Jamonit.org) contains images and posts that include the AAU Mark and/or the AAU Shield.

102. The Jamonit.org website has a link to Twitter which resolves at https://twitter.com/jamonitevents?lang=en.  This page is title SportsplexEvents and is located at @JamonitEvents.

103. The @JamonitEvents Twitter page claims:

**sportsplexlvevents**

@JamOnItEvents

Sportsplex Events is one of the sports industry leaders in providing the best and largest AAU-licensed basketball events on the west coast.

⊙ Reno, NV   ⊘ sportsplexlv.leagueapps.com   ▦ Joined May 2014

**1,434** Following    **1,266** Followers

104. The @JamonitEvents Twitter page contains images and posts that include the AAU Mark and/or the AAU Shield.

105. The Jamonit.org website has a tab for Equipment Rental, which redirects to a Jamonitequipmentrental.com website.

106. The Jamonitequipmentrental.com website has a copyright notice indicating Jam On It, LLC as the author of the website.

107. The Menu on the Jamonitequipmentrental.com website has a tab for "Chicago AAU Equipment Rental."

-15-

283104426v.2

108. The Chicago AAU Equipment Rental tab redirects to a sportscya.com website. While using the AAU name in the tab, the website to which this tab redirects does not resolve.

109. The Jamonitequipmentrental.com website has a link titled "Equipment Pricing Here."

110. The "Equipment Pricing Here" link that directs to http://www.jamonitequipmentrental.com/uploads/1/1/2/8/112841811/equipment website edoo.dox.

111. The "Equipment Pricing Here" link opens a Word document that includes the AAU Shield. It also uses the AAU Mark.

112. The Jamonitequipmentrental.com website lists AAU Hockey, AAU Volleyball, and Pacific AAU in the "Current and Past Clients."

113. The Jamonitequipmentrental.com website uses the AAU Mark in an effort to use AAU's good will for Jamonitequipmentrental.com's benefit.

114. JOI Basketball has a Twitter page located at @Jamonit_Reno.

115. The @Jamonit_Reno Twitter page carries a banner including the AAU Shield:



116. One or more of the Defendants operate a TikTok account that incorporates the AAU Shield.

117. One or more of the Defendants have other social media pages using the AAU mark.

118. An employee or agent of one or more of the Defendants has registered an AAUPacific.com domain.

119. One or more of the Defendants arranged to have the AAUPacific.org domain redirected to the AAUPacific.com domain.

120. The AAUPacific.com website had and/or has "Shop" capabilities that incorporate the use of the AAU Mark and/or AAU Shield.

121. Upon information and belief, one or more of the Defendants has obtained revenue through this site that should have gone to the Plaintiff.

283104426v.2

122. Since mid-September, 2022, the Defendants were not authorized to use the AAU Mark, the AAU Shield, other AAU trademarks, and images and material branded with AAU.

123. Prior to September 2022, the Defendants advertised programs as licensed by the AAU although they were not so licensed.

124. The Defendants are/were aware that the AAU Bylaws permit only AAU members to participate in licensed events.

125. The Defendants are/were aware that the AAU Bylaws only allow licenses to be issued to a club in good standing and which meets the membership criteria.

126. The Defendants have advertised a connection with the AAU without authorization.

127. The Defendants have issued public statements that are likely to cause confusion with the consuming public.

128. Upon information and belief, the goods and services Defendants have manufactured, distributed, provided, marketed, advertised, promoted, offered for sale, sold and provided under the Infringing Marks are provided to the same or similar consumers.

129. Upon information and belief, the goods and services Defendants have manufactured, distributed, provided, marketed, advertised, promoted, offered for sale, sold and provided under the Infringing Marks are provided through the same channels of distribution.

130. Upon information and belief, the goods and services Defendants have manufactured, distributed, provided, marketed, advertised, promoted, offered for sale, sold and provided under the Infringing Marks overlap with those provided by Plaintiff.

131. Upon information and belief, the goods and services Defendants have manufactured, distributed, provided, marketed, advertised, promoted, offered for sale, sold and provided under the Infringing Marks are provided to consumers who would believe that the goods and services would be from the same source.

132. Defendant has not been providing goods and services for the same length of time as Plaintiff, does not have the same geographic reach as Plaintiff, and does not provide the same opportunities that Plaintiff has to offer.

283104426v.2

133. Defendants' infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Defendants' goods and services and have and are likely to deceive the relevant consuming public into believing, mistakenly, that Defendants' goods and services originate from, are associated or affiliated with, or otherwise authorized by Plaintiff.

134. Upon information and belief, Defendants' infringing acts as alleged herein have resulted in actual confusion.

135. Defendants' acts are likely to result in actual confusion.

136. On or about April 16, 2020, Defendant MATT WILLIAMS registered Pacfic AAU as a Nevada Non-Profit corporation.

137. Between March 2022 and October, 2022, Defendants MATT WILLIAMS, BRENNAN SULLIVAN, ENNIS WESLEY and TATIANA WESLEY were officers of Pacific AAU.

138. Defendants MATT WILLIAMS, MIKE WILLIAMS and ENNIS WESLEY received compensation from Pacific AAU

139. On or about November 8, 2022, Defendant ENNIS WESLEY registered Pacfic AAU District as a Nevada Non-Profit corporation.

140. Pacific AAU District's officers include Defendants ENNIS WESLEY and TATIANA WESLEY.

141. Defendants MIKE WILLIAMS, ENNIS WESLEY, TATIANA WESLEY and BRENNAN SULLIVAN were and/or are officers of the AAU Pacific District since at least as early as November 2022.

142. Defendants MATT WILLIAMS, MIKE WILLIAMS, ENNIS WESLEY, TATIANA WESLEY and BRENNAN SULLIVAN all had email addresses at the @JamOnIt.org domain.

143. Defendants MIKE WILLIAMS, ENNIS WESLEY, TATIANA WESLEY and BRENNAN SULLIVAN owed a duty of loyalty to the Plaintiff to act in the best interest of the Plaintiff and its AAU Pacific District.

-18-

283104426v.2

144. Defendants MIKE WILLIAMS, ENNIS WESLEY, TATIANA WESLEY and BRENNAN SULLIVAN put the interests of MATT WILLIAMS and/or the JAM ON IT ENTITIES ahead of the interests of the Plaintiff.

145. At the time that Defendants MATT WILLIAMS, MIKE WILLIAMS, ENNIS WESLEY, TATIANA WESLEY and BRENNAN SULLIVAN were affiliated members of the AAU, they were acting in the best interests of the Jam On It Entities, or for their own self-interest.

146. Defendants profited by assisting the JAM ON IT ENTITIES at the detriment to the Plaintiff.

147. Upon information and belief, Defendants' acts are willful with the deliberate intent to trade on the goodwill of Plaintiff's trademarks, cause confusion and deception in the marketplace, and divert potential sales of Plaintiff's goods and services to the Defendants.

148. The Defendants profited from the use of the AAU trademarks, including the AAU Mark and AAU Shield among others.

149. Defendants profit from the use of the AAU trademarks and good will violated the bylaws of the AAU and constituted an impermissible conflict of interest.

150. Defendants have caused damage to the Plaintiff, including the loss of members, the loss of licensing revenue, the loss of or damage to its reputation, all resulting in monetary loss to the Plaintiff.

151. Defendants have profited improperly from the use of the Plaintiff's trademarks, good will and reputation.

152. Defendants' acts are causing and, unless restrained, will continue to cause damage and immediate irreparable harm to Plaintiff and to its valuable reputation and goodwill with the consuming public for which Plaintiff has no adequate remedy at law.

**COUNT ONE**

**Violation of the Lanham Act § 43(a), 15 U.S.C. § 1125(a)**

**Claim of Trademark Infringement—False Endorsement and Unfair Competition**

**(Against all Defendants)**

153. Plaintiff repeats and realleges paragraphs 1 through 152 hereof, as if fully set forth herein.

-19-

283104426v.2

154. Defendants' unauthorized use in commerce of the Infringing Marks as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' goods and services, and is likely to cause consumers to believe, contrary to fact, that Defendants' goods and services are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants are in some way affiliated with or sponsored by Plaintiff. Defendants' conduct therefore constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

155. Upon information and belief, Defendants have committed the foregoing acts of infringement with full knowledge of Plaintiff's prior rights in the AAU trademarks and with the willful intent to cause confusion and trade on Plaintiff's goodwill.

156. Defendants' conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

157. Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

158. Plaintiff is alternatively entitled to statutory damages under 15 U.S.C. §1117.

159. Plaintiff is entitled to treble damages under 15 U.S.C. §1117.

160. Plaintiff is entitled to recover punitive damages and attorneys' fees in light of the egregious nature of Defendants' conduct, including the knowing violations of the Plaintiff's rights.

**COUNT TWO**

**Unfair Competition under the Lanham Act, 15 U.S.C. § 1125(a)**

**(Against all Defendants)**

161. Plaintiff repeats and realleges paragraphs 1 through 160 hereof, as if fully set forth herein.

162. Defendants' unauthorized use in commerce of the Infringing Marks as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' goods and services, and is likely to cause consumers to believe, contrary to fact, that

-20-

283104426v.2

Defendants' goods and services are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants are in some way affiliated with or sponsored by Plaintiff.

163. Defendants' unauthorized use in commerce of the Infringing Marks as alleged herein constitutes use of a false designation of origin, false endorsement, false advertising and misleading description and representation of fact.

164. Defendants' unauthorized use in commerce of the Infringing Marks as alleged herein constitutes a false endorsement of its goods and services.

165. Defendants' unauthorized use in commerce of the Infringing Marks as alleged herein constitutes a false advertisement of its goods and services.

166. Defendants' unauthorized use in commerce of the Infringing Marks as alleged herein constitutes a false designation of origin of its goods and services

167. Upon information and belief, Defendants' conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiff.

168. Defendants' conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

169. Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

170. Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT THREE

### Trademark Counterfeiting (15 U.S.C. §§ 1114(1), 1116)

### (Against all Defendants)

171. Plaintiff repeats and realleges paragraphs 1 through 170 hereof, as if fully set forth herein.

-21-

283104426v.2

172. Defendants have used spurious designations on goods and services that are identical to the goods and services marketed under AAU's trademarks.

173. Defendants have used these spurious designations, identical to the goods and services of Plaintiff for the purpose of advertising, promoting, offering for sale, and selling counterfeit JOI-branded products and services.

174. Knowing they are counterfeit, Defendants used these spurious designations in commerce to advertise, promote, offer for sale, sell and provide counterfeit products and services. For example, Defendants used counterfeit Marks in signing up clubs, teams and players to participate in Defendants' activities, and provided consumers with fraudulent documentation purporting to verify the authenticity of basketball services, which were in fact counterfeit.

175. Defendants' use of the spurious designations identical to Plaintiff's trademarks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, sale of products, services as alleged, has caused and is likely to continue to cause, customer confusion and/or deception about whether Defendants' products and/or services originate with, and/or are sponsored or approved by, and/or offered with authorization from the Plaintiff.

176. Based on AAU's longstanding and continuous use of its trademarks in commerce throughout the United States, as well as the incontestable federal registrations as set forth above, Defendants had actual and constructive knowledge of AAU's superior rights in and to the AAU trademarks when Defendants began using spurious designations identical to the AAU's trademarks as part of their efforts to deceive consumers and the general public.

177. Upon information and belief, Defendants adopted and used the AAU's trademarks in furtherance of their willful and deliberate scheme of trading on the extensive customer good will, reputation, fame, and commercial success of products and services that AAU offers under its trademarks, including but not limited to, AAU-branded products and services.

178. Upon information and belief, Defendants have made, and may continue to make, ill-gotten profits and gain from their unauthorized use of the AAU trademarks, to which Defendants are not entitled to at law or equity.

283104426v.2

179. Defendants' acts and conduct constitute trademark counterfeiting, in violation of 15 U.S.C. § 1114(1).

180. Plaintiff has suffered and will continue to suffer irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law.

181. Plaintiff has been damaged by the acts of Defendants in an amount to be proven at trial.

**COUNT FOUR**

**Federal Trademark Dilution (15 U.S.C. § 1125(c))**

**(Against all Defendants)**

182. Plaintiff repeats and realleges paragraphs 1 through 181 hereof, as if fully set forth herein.

183. Plaintiff's AAU Mark and AAU SHIELD are distinctive and "famous marks" within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

184. Plaintiff's AAU Mark and AAU SHIELD became distinctive and famous prior to the Defendants' acts as alleged herein.

185. Defendants' acts as alleged herein have diluted and will, unless enjoined, continue to dilute and are likely to dilute the distinctive quality of Plaintiff's famous AAU Mark and AAU SHIELD.

186. Defendants' acts as alleged herein will, unless enjoined, likely tarnish Plaintiff's AAU Mark and AAU SHIELD by undermining and damaging the valuable goodwill associated therewith.

187. Defendants' acts as alleged herein are intentional and willful in violation of Section 43(c)(1) of the Lanham Act, and have already caused Plaintiff irreparable damage and will, unless enjoined, continue to so damage Plaintiff, which has no adequate remedy at law.

188. Plaintiff is entitled to, among other relief, an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116 and 1117, together with prejudgment and post-judgment interest.

283104426v.2

## COUNT FIVE

## FALSE DESIGNATION OF ORIGIN UNDER § 43(A) OF THE LANHAM ACT

### (Against all Defendants)

189. Plaintiff incorporates the allegations in paragraphs 1 through 188 as if fully set forth herein.

190. Defendants' use of the AAU trademarks constitutes a false designation of origin which is likely to deceive and has deceived customers and prospective customers into believing that Defendants' goods and services is that of the Plaintiff and, as a consequence, are likely to divert and have diverted customers away from the Plaintiff.

191. Plaintiff has no control over the nature and quality of the goods and services manufactured, distributed, provided, marketed, advertised, promoted, offered for sale, and/or sold by Defendants or its licensees. Any failure, neglect, or default by Defendants in providing such goods and services will reflect adversely on Plaintiff as the believed source of origin thereof, hampering efforts by Plaintiff to continue to protect its outstanding reputation for providing youth sports programs, tournaments and AAU-branded products, resulting in loss of revenue, prestige, and the considerable expenditures to promote its goods and services under the mark, all to the irreparable harm of the Plaintiff.

192. Defendants' false designation of origin will continue unless enjoined by this Court.

193. Plaintiff has incurred damages and is likely to incur damages as a result of Defendants' conduct.

## COUNT SIX

## COMMON LAW TRADEMARK INFRINGEMENT

### (Against all Defendants)

194. Plaintiff incorporates the allegations in paragraphs 1 through 193 as if fully set forth herein.

195. Plaintiff owns all right, title, and interest in and to the AAU trademarks, including all common law rights in such marks, and such marks are distinctive or have acquired distinctiveness.

196. Defendants' acts constitute trademark infringement in violation of the common law of the State of Nevada.

-24-

283104426v.2

197. Upon information and belief, Defendants have acted with knowledge of the AAU trademarks and with the deliberate intention to unfairly benefit from the incalculable goodwill symbolized thereby.

198. Defendants have profited from their unlawful actions and have been unjustly enriched to the detriment of Plaintiff. Defendants' unlawful actions have caused Plaintiff monetary damage in an amount presently unknown, but in an amount to be determined in excess of $100,000, more properly to be determined at trial.

199. Upon information and belief, by their acts, Defendants have made and will make substantial profits and gain to which they are not entitled in law or equity.

200. Defendants' intentional and willful conduct has caused, and will continue to cause, Plaintiff irreparable harm unless enjoined, and Plaintiff has no adequate remedy at law.

**COUNT SEVEN**

**Common Law Unfair Competition**

**(Against all Defendants)**

201. Plaintiff incorporates the allegations in paragraphs t through 200 as if fully set forth herein.

202. Defendants' use of the Infringing Marks in commerce in connection with its goods and services is intended to cause, has caused, and is likely to continue to cause confusion, mistake and deception among the general consuming public and the trade as to whether the goods and services bearing the Infringing Marks originate from, or are affiliated with, sponsored by, or endorsed by Plaintiff.

203. For many years, Defendants would attract customers by using the goodwill of the AAU and its trademarks. Defendants would direct customers to sign up for AAU licensed events and to purchase AAU-sponsored goods.

204. For many years, Defendants would sign up members for AAU.

205. Since September 2022, Defendants have diverted members away from the AAU, as well as sales away from the AAU or AAU-sponsored vendors.

206. Upon information and belief, Plaintiff competes with Defendants for a common pool of customers.

-25-

283104426v.2

207.   Upon information and belief, Defendant has acted with knowledge of the AAU trademarks and with the deliberate intent to deceive the general consuming public and trade, and to benefit unfairly from the incalculable goodwill symbolized by the AAU trademarks.

208.   The aforesaid acts of Defendants constitute unfair competition in violation of the common law of the States of Nevada, Hawaii and Utah.

209.   Defendants have profited from their unlawful actions and have been unjustly enriched to the detriment of Plaintiff. Defendants' unlawful actions have caused Plaintiff monetary damage in an amount presently unknown, but in an amount in excess of $100,000 to be more properly determined at trial.

210.   Upon information and belief, by their acts, Defendants have made and will make substantial profits and gain to which they are not entitled in law or equity.

211.   Defendants' intentional and willful conduct has caused, and will continue to cause, Plaintiff irreparable harm unless enjoined and Plaintiff has no adequate remedy at law.

## COUNT EIGHT

### Violation of Nevada's Deceptive Trade Practices Law (N.R.S. § 598.0915)

### (Against all Defendants)

212.   Plaintiff incorporates the allegations in Paragraphs 1 through 211 as if fully set forth herein.

213.   In the course of conducting its business, Defendants knowingly made false representations as to affiliation, connection and/or association with Plaintiff by using a mark confusingly similar to AAU trademarks, caused a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services, caused a likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, the AAU, represented that its goods or services have sponsorship and approval, status, affiliation, or connection with the AAU, and/or was otherwise engaged in deceptive trade practices in violation of Nevada law, pursuant to N.R.S. § 598.0915.

214.   As the direct and proximate result of Defendants' conduct, Plaintiff has suffered, and will continue to suffer, monetary damages and irreparable injury to its business, reputation, and good will.

-26-

283104426v.2

215.  As a result of Defendants' conduct, Plaintiff is entitled to monetary relief and injunctive relief.

## COUNT NINE

**Violation of Hawaii's Deceptive Trade Practice Act (Hawaii Revised Statute §481A-3)**

**(Against all Defendants)**

216.  Plaintiff incorporates the allegations in paragraphs 1 through 215 as if fully set forth herein.

217.  In the course of conducting its business, Defendants knowingly made false representations as to affiliation, connection and/or association with Plaintiff by using a mark confusingly similar to AAU trademarks, caused a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services, caused a likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, the AAU, represented that its goods or services have sponsorship and approval, status, affiliation, or connection with the AAU, and/or was otherwise engaged in deceptive trade practices in violation of Hawaii law, pursuant to Hawaii Revised Statute §481A-3.

218.  As the direct and proximate result of Defendants' conduct, Plaintiff has suffered, and will continue to suffer, monetary damages and irreparable injury to its business, reputation, and good will.

219.  As a result of Defendants' conduct, Plaintiff is entitled to monetary relief and injunctive relief.

## COUNT TEN

**Violation of Utah's Deceptive Trade Practices Law/Unfair Competition (Utah Code 13-11a-3) (Against all Defendants)**

220.  Plaintiff incorporates the allegations in paragraphs 1 through 219 as if fully set forth herein.

221.  In the course of conducting its business, Defendants knowingly made false representations as to affiliation, connection and/or association with Plaintiff by using a mark confusingly similar to AAU trademarks, caused a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services, caused a likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or

-27-

283104426v.2

certification by, the AAU, represented that its goods or services have sponsorship and approval, status, affiliation, or connection with the AAU, engaged in other conduct which similarly created a likelihood of confusion or of misunderstanding and/or was otherwise engaged in deceptive trade practices in violation of otherwise engaged in deceptive trade practices in violation of Utah law, pursuant to Utah Code §13-11a-3.

222. As the direct and proximate result of Defendants' conduct, Plaintiff has suffered, and will continue to suffer, monetary damages and irreparable injury to its business, reputation, and good will.

223. As a result of Defendants' conduct, Plaintiff is entitled to monetary relief and injunctive relief.

### COUNT ELEVEN

### Intentional Interference with Prospective Economic Advantage

### (Against all Defendants)

224. Plaintiff incorporates the allegations in paragraphs 1 through 223 as if fully set forth herein.

225. Upon information and belief, at the time Defendants adopted and began using Plaintiff's names and marks and since that time, Defendants knew and have known that Plaintiff is in the business of providing sports programs for all participants of all ages beginning at the grassroots level, including hosting and licensing tournaments, and in licensing others to sell products.

226. Defendants committed acts intended or designed to disrupt Plaintiff's prospective economic advantage by providing these services, while claiming an affiliation with AAU.

227. At the time the Defendants claimed certain affiliations or licenses, they lacked the licenses and/or were not affiliated with, licensed by or endorsed by Plaintiff.

228. Defendants' actions have disrupted or are intended to disrupt Plaintiff's business by, among other things, providing these services, while claiming an affiliation with AAU.

229. Defendants have no legal right, privilege or justification for its conduct.

230. As a direct and proximate result of Defendants' intentional interference with Plaintiff's prospective economic advantage, Plaintiff has suffered, and will continue to suffer, monetary damages and irreparable injury.

-28-

283104426v.2

## COUNT TWELVE

### Misappropriation of Confidential Information

### (Against all Defendants)

231. Plaintiff incorporates the allegations in paragraphs 1 through 230 as if fully set forth herein.

232. Plaintiff has developed a membership list of individuals who have signed up to be members of AAU.

233. Membership in the AAU is needed to participate in AAU licensed events.

234. Plaintiff has developed a membership list of clubs who have signed up to be members of the AAU.

235. Membership in the AAU is needed for clubs or teams to compete in AAU events, to be eligible to vote at district meetings, to be eligible for practice insurance certificates, to be licensed to host an event, to be eligible to use the AAU Mark and AAU SHIELD in AAU licensed events and to take advantage of all the AAU offers. The contact information, knowledge of the inner workings of the clubs and teams, and the structure of such clubs and teams is unique and not generally known to the public.

236. The AAU has considered such information as proprietary business information and/or a trade secret.

237. The AAU has protected the unauthorized dissemination of its membership list through various means and methods.

238. The Defendants, through their positions in the AAU, had access to the membership information.

239. Through their actions, the Defendants have misappropriated AAU's confidential information for their own benefit, and have used and/or disclosed AAU's confidential information to the detriment of AAU.

240. Based on the Defendants' prior egregious actions, it is inevitable that they will continue to disclose AAU's confidential information absent an order from this Court enjoining them from such further disclosures.

-29-

283104426v.2

241. Therefore, AAU is entitled to an injunction preventing the Defendants from retaining, utilizing and further disclosing AAU's Confidential Information.

## COUNT THIRTEEN

### Unjust Enrichment

### (Against all Defendants)

242. Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 241 as though fully set forth herein.

243. The Defendants had access to AAU's confidential information, including but not limited to the confidential customer database, sponsors, and vendors.

244. The Defendants wrongfully misappropriated this confidential information from AAU.

245. Upon information and belief, the Defendants have used AAU's confidential information to improve their business position by inter alia contacting and soliciting AAU's customers without compensating AAU for this information.

246. The Defendants have received a benefit as a result of their wrongful conduct.

247. The Defendants have unjustly retained the benefit of the use of AAU's confidential information without compensation to and to the detriment of AAU.

248. The Defendants' retention of the benefits derived from AAU's confidential information violates fundamental principles of justice, equity, and good conscience.

249. As a result of Defendants' actions, the Plaintiff has been damaged in excess of $100,000, and will be irreparably harmed unless Defendants' conduct is enjoined.

## COUNT FOURTEEN

### Breach of Fiduciary Duty

### (Against Defendant Matt Williams, Mike Williams, Ennis Wesley, Tatiana Wesley and Brennan Sullivan)

250. Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 249 as though fully set forth herein.

251. Matt Williams is a former Governor of AAU's Pacific District. The objective of the District was to foster the mission of the AAU, protect and promote the mutual interests of AAU

-30-

283104426v.2

members, provide administrative support and services to sports-oriented groups, and conduct sports programs in approved sports.  Matt Williams' duties included presiding over District meetings, appointing committees, calling special meetings, and performing other duties that pertain to the Office of the Governor.   As such, he owed a duty of loyalty to AAU.

252.   Ennis Wesley is a Governor of AAU's Pacific District.  Ennis Wesley's duties include presiding over District meetings, appointing committees, calling special meetings, and performing other duties that pertain to the Office of the Governor.   As such, he owed a duty of loyalty to AAU.

253.   Mike Williams was and/or is the Lt. Governor of AAU's Pacific District.  Mike Williams' duties included anything assigned or directed by the Governor.

254.   Tatiana Wesley was and/or is a Treasurer of the AAU's Pacific District.

255.   Brennan Sullivan was and/or is a Treasurer of the AAU's Pacific District.

256.   Matt Williams breached his duty of loyalty to AAU during his time as Governor of AAU's Pacific District by, among other things, participating in a scheme in which the Defendants used the AAU Mark and AAU SHIELD for unlicensed events, and by taking actions to benefit himself personally to the detriment of the District.

257.   Ennis Wesley breached his duty of loyalty to AAU during his time as Governor of AAU's Pacific District by, among other things, participating in a scheme in which the Defendants used the AAU Mark and AAU SHIELD for unlicensed events, and by taking actions to benefit himself personally to the detriment of the District.

258.   Mike Williams, Tatiana Wesley and Brennan Sullivan breached their respective duty of loyalty to AAU by, among other things, participating in a scheme in which the Defendants used the AAU Mark and AAU SHIELD for unlicensed events, and by taking actions to benefit themselves personally to the detriment of the District.

259.   Matt Williams operated for profit entities to benefit from his position of authority within the AAU, and earned significant income from such endeavors.  This included ensuring contracts were given to his entity that provided facilities for tournaments and other events where he hosted AAU-branded programs and events, some of which were not licensed.

-31-

283104426v.2

260. Ennis Wesley operates and/or operated for profit entities to benefit from his position of authority within the AAU, and earned significant income from such endeavors.  This includes ensuring contracts were given to his entity that provided facilities for tournaments and other events where he hosted AAU-branded programs and events, some of which were not licensed.

261. Matt Williams operated a for-profit equipment rental business to benefit from his position of authority with the AAU, and earned significant income from such endeavor.

262. Matt Williams created and operated tournaments and events using the AAU Mark and AAU SHIELD.

263. Ennis Wesley created and operates and/or operated tournaments and events using the AAU Mark and AAU SHIELD.

264. Defendants Tatiana Wesley, Mike Williams and Brennan Sullivan operate and/or operated tournaments and events using the AAU Mark and AAU SHIELD.

265. Matt Williams, Ennis Wesley, Tatiana Wesley, Mike Williams and Brennan Sullivan failed to follow the AAU guidelines when using the AAU Mark and AAU SHIELD.

266. Matt Williams, Ennis Wesley, Mike Williams, Tatiana Wesley and Brennan Sullivan financially benefitted from the use of the AAU Mark and AAU SHIELD.

267. Matt Williams Ennis Wesley, Mike Williams, Tatiana Wesley and Brennan Sullivan usurped opportunities that should have been provided to the AAU.

268. Matt Williams's breach of his duty of loyalty has caused, and will cause, AAU irreparable harm including unfair competition by competitors.

269. Ennis Wesley's breach of his duty of loyalty has caused, and will cause, AAU irreparable harm including unfair competition by competitors.

270. Tatiana Wesley's breach of her duty of loyalty has caused, and will cause, AAU irreparable harm including unfair competition by competitors.

271. Mike Williams's breach of his duty of loyalty has caused, and will cause, AAU irreparable harm including unfair competition by competitors.

272. Brennan Sullivan's breach of his duty of loyalty has caused, and will cause, AAU irreparable harm including unfair competition by competitors.

-32-

283104426v.2

273. Matt Williams, Ennis Wesley, Tatiana Wesley, Mike Williams and Brennan Sullivan had a continuing duty not to disclose AAU's confidential information for their own benefit.

274. After leaving the AAU, Matt Williams has used information and taken actions that were prohibited pursuant to his position in the AAU.

275. While still working with the AAU, Ennis Wesley, Tatiana Wesley, Mike Williams and Brennan Sullivan used information and took actions that were prohibited pursuant to their positions in the AAU.

276. AAU is entitled to an injunction preventing Matt Williams's further breach of his duty of loyalty.

277. AAU is entitled to an injunction preventing Ennis Wesley's, Tatiana Wesley's, Mike Williams' and Brennan Sullivan's further breach of duty of loyalty.

278. In addition, as a direct and proximate result of Matt Williams's, Ennis Wesley's, Tatiana Wesley's, Mike Williams' and Brennan Sullivan's unlawful conduct, AAU has suffered and will continue to suffer damages in an amount presently unknown and to be ascertained at the time of trial.

**Request for Relief**

Plaintiff requests judgment against Defendants as follows:

1. Granting an injunction permanently enjoining the Defendants, individually and through their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise from:

   a. manufacturing, distributing/providing, selling, marketing, advertising, promoting, or authorizing any third party to manufacture, distribute/provide, sell, market, advertise, or promote any goods or services bearing the AAU Mark, the AAU SHIELD or the AAU's trademarks or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's trademarks;

   b. engaging in any activity that infringes Plaintiff's rights in its trademarks;

   c. engaging in any activity constituting unfair competition with Plaintiff;

-33-

283104426v.2

d.  engaging in any activity that is likely to dilute the distinctiveness of Plaintiff's trademarks;

e.  making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that (i) Defendants' goods/services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Plaintiff, or (ii) Plaintiff's goods/services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Defendants;

f.  using or authorizing any third party to use in connection with any business, goods, or services any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods and/or services with Plaintiff or tend to do so;

g.  registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the AAU Mark and/or AAU SHIELD mark or any other mark that infringes or is likely to be confused with Plaintiff's trademarks, or any goods or services of Plaintiff, or Plaintiff as their source; and

h.  aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (h).

2. Granting such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that any goods or services manufactured, sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Defendants are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Plaintiff or constitute or are connected with Plaintiff's goods/services.

3. Directing Defendants to immediately cease all manufacture, display, distribution, marketing, advertising, promotion, sale, offer for sale, and/or use of any and all packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, equipment and other materials that

-34-

283104426v.2

feature or bear any designation or mark incorporating the INFRINGING MARKS or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's trademarks, and to direct all distributors, retailers, wholesalers, and other individuals and establishments wherever located in the United States that distribute, advertise, promote, sell, or offer for sale Defendants' goods or services to cease forthwith the display, distribution, marketing, advertising, promotion, sale, and/or offering for sale of any and all goods, services, packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, equipment and other materials featuring or bearing the mark INFRINGING MARKS or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the Plaintiff's trademarks, and to immediately remove them from public access and view.

4. Directing that Defendants recall and deliver up for destruction or other disposition all goods, packaging, shopping bags, containers, advertisements, promotions, signs, videos displays, equipment and related materials incorporating or bearing the AAU Trademarks or any other mark that is a counterfeit, copy, confusingly similar variation, or colorable imitation of Plaintiff's trademarks.

5. Directing, pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1116(a)), Defendants to file with the court and serve upon Plaintiff's counsel within thirty (30) days after service on Defendants of an injunction in this action, or such extended period as the court may direct, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied therewith.

6. Awarding Plaintiff actual damages in an amount not less than $2,000,000.

7. Awarding Plaintiff an amount up to three times the amount of its actual damages, in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)).

8. Directing that Defendants account to and pay over to Plaintiff all profits realized by its wrongful acts in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)), enhanced as appropriate to compensate Plaintiff for the damages caused thereby.

283104426v.2

9. Awarding Plaintiff punitive and exemplary damages as the court finds appropriate to deter any future willful infringement.

10. Declaring that this is an exceptional case pursuant to Section 35(a) of the Lanham Act and awarding Plaintiff its costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a)).

11. Awarding Plaintiff interest, including prejudgment and post-judgment interest, on the foregoing sums.

12. Awarding such other and further relief as the Court deems just and proper.

DATED this 1st day of June, 2023.



BY: */s/ Michael Lowry*
MICHAEL P. LOWRY
Nevada Bar No. 10666
Attorneys for Amateur Athletic Union of the United States, Inc.

-36-